| |
|---|
| **Doe v Advantagecare Physicians P.C.** |
| 2024 NY Slip Op 33081(U) |
| September 4, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 508631/2016 |
| Judge: Leon Ruchelsman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: CCP
-------------------------------------------x
JANE DOE,

                       Plaintiff,      Decision and order

        - against -             Index No. 508631/2016

ADVANTAGECARE PHYSICIANS, P.C., AND
HOWARD M. WEINTRAUB,

                   Defendants,     September 4, 2024
-------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN      Motion Seq. #14 & #15

The plaintiff commenced this action following an incident that occurred on February 25, 2015. On that date the plaintiff alleges she was sexually abused and assaulted by defendant Dr. Howard Weintraub while undergoing a medical examination in his office which is part of Advantagecare Physicians P.C. [hereinafter 'ACP']. The verified complaint alleges causes of action against defendant Weintraub for assault, battery and a violation of the New York City Victims of Violent Crime Protection Act. The verified complaint alleges causes of action against defendant ACP for negligent hiring and retention and negligent supervision and the failure to provide adequate security. The parties have engaged in discovery and now these motions seeking further discovery have been filed. The plaintiff seeks information regarding other past and current litigations involving the defendant ACP that concern ACP's failure to respond to complaints about sexual abuse in facilities operated by ACP. Specifically, the plaintiff alleges there are four other lawsuits

[*1]

brought by individuals who filed complaints of sexual misconduct or discrimination that were not addressed by ACP or were simply ignored by ACP. The plaintiff argues specific information about the nature of those complaints contained within those lawsuits and how ACP dealt with the complaints that form the basis of those lawsuits can help support the plaintiff's allegations of institutional negligence in this case. The defendants have cross-moved seeking a protective order such information need not be disclosed. The motions have been opposed respectively. Papers were submitted by the parties and arguments held. After reviewing all the arguments this court now makes the following determination.

### Conclusions of Law

It is well settled that discovery rules and statutes "embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" (see, Spectrum Systems International Corporation v. Chemical Bank, 78 NY2d 371, 575 NYS2d 809 [1991]). The reach of discovery is commensurate with the breadth of the plaintiff's allegations (Kakharov v. Archer, 166 AD3d 746, 85 NYS3d 780 [2d Dept., 2018]).

Melfe v. Roman Catholic Diocese of Albany, 196 AD3d 811, 151 NYS3d 233 [3rd Dept., 2021] is instructive. In that case

2

[* 2]

siblings sued a priest, Melfe, for sexual abuse while employed by the Diocese of Albany. The complaint asserted claims against the Diocese for negligent supervision alleging the Diocese was aware of the abuse and did nothing to stop it from continuing. The plaintiff's sought information regarding six other non-party priests who were removed from the Diocese in 2002. The information was not sought to corroborate any acts committed by Melfe but rather to demonstrate a culture within the Diocese of permitting such abuse and thus the information could "establish institutional negligence and statutory violations, which constitute the Diocese's actual practice or protocol" (id). The court explained that, generally, evidence of specific acts in the past is not relevant to corroborate alleged acts in the case at hand. However, the court noted that evidence of a particular pattern of behavior was discoverable to demonstrate the same behavior was maintained. Thus, "evidence of the Diocese's deliberate and repetitive practice of silencing accusations, if any, is relevant and could permit an inference that the Diocese was negligent in this particular instance by failing to act when confronted with allegations of Melfe's abuse" (id). The court rejected the argument the files of the non-party priests could not be introduced as habit evidence at trial. The court explained that whether the information could later be introduced at trial had no bearing upon whether the information was

3

[*3]

discoverable.

The defendants argue the information sought in this case concerns allegations of misconduct that took place at other facilities and do not involve the facility where Dr. Weintraub worked and do not involve Dr. Weintraub at all. Thus, the request is over broad and improper. The defendants cite to <u>Doren v. Allstar Security and Consulting Inc.</u>, 2023 WL 4234244 [Supreme Court New York County 2023]). In that case the plaintiff, a patron at a sports club was injured during a fight. The plaintiff sued Allstar, the security company, and asserted claims for negligent supervision and retention. The plaintiff sought information concerning seventeen other lawsuits defended by Allstar for similar claims that occurred at other locations. The court rejected the discovery request. The court explained that disclosure would be appropriate "to establish actual or constructive notice of similar conduct for purposes of a negligence claim" at the same location where the incident occurred. The court noted that "the demands at issue in this case seek disclosure of incidents which happened at other locations and involve different employees from those involved in the incident giving rise to this lawsuit" (id). The court stressed that such information was entirely irrelevant. The court concluded that "what Plaintiff must prove in this action is that Allstar had notice of some dangerous propensity of the

4

[* 4]

employees or venue involved in the incident giving rise to the case at bar...It is irrelevant if Allstar had notice of some dangerous propensity of employees who were not involved in the incident which caused Plaintiff injury. Therefore, to the extent the discovery demands seek information that (a) happened at another venue and (b) involve employees not involved in the case at bar, those demands are overbroad and irrelevant. The motion to compel as to that information is denied" (id).

Of course, it would be irrelevant to allege negligent hiring at one sports club merely because such negligent hiring may exist in a different sports club across town. The two establishments are different in the nature of the customers and patrons, employees, security needs and training required. There is no basis establishing any common thread or theme between seventeen different incidents that all occurred while Allstar was employed as the security company. There is no one size fits all theory that permits the plaintiff at a particular sports club to discover how fights at other clubs were handled by entirely different staff in entirely different circumstances. For these reasons the discovery was correctly denied.

In this action the plaintiff is alleging the unique claim of institutional negligence. While there are scholars that assert such negligence raises Constitutional issues in the religious organization context (see, Overview of Institutional Negligence,

5

Religious Organization and the Law, §22:20 by W. Cole Durham and Robert Smith [December 2023 Update]) no such criticism exist regarding medical facilities. Indeed, institutional negligence in the medical arena can be traced to <u>Darling v. Charleston Community Memorial Hospital</u>, 33 Ill2d 326, 211 NE2d 253 (Supreme Court of Illinois 1965] cert. denied, 383 U.S. 946 (1966)). This theory views all the facilities operating under one unified umbrella with one unified pattern of behavior when confronted with the same circumstances. Therefore, other instances of neglecting allegations of abuse are surely relevant establishing whether the abuse alleged in this case was likewise neglected. That would help establish claims of negligent supervision. Therefore, it does not matter when those other lawsuits were filed. The pattern is not dependent on time, rather, it is dependent upon whether the pattern exists.

Next, the defendants argue the four other lawsuits do not even involve similar claims of sexual abuse, the neglect of which would prove relevant. However, all four lawsuits involve claims filed by customers or employees alleging some sort of discrimination or abuse. The significant issue in all four cases that are relevant in this case is not the nature of the allegations per se but rather ACP's response to the allegations when first raised. Thus, the plaintiff is entitled to explore ACP's response or conduct when first notified of claims of abuse

[* 6]

or discrimination and probe whether ACP established a pattern of ignoring or neglecting such claims as it pertains to its employees. Thus, it is ACP's reaction to the claims of abuse that form the pattern that can establish a similar pattern in this case. This institutional negligence claim is particularly apt in cases of neglecting claims of abuse (Melfe, supra). While there might be the potential of establishing such institutional negligence in the sports club security context, or other contexts, the fluid nature of those events would probably foreclose such discovery in most cases (Doren, supra). Of course, the defendants will be able to try and mitigate any such evidence that is yielded, however, there is no basis to foreclose the information in the first place.

Therefore, based on the foregoing, the motion seeking information pursuant to the plaintiff's notice of discovery and inspection dated March 15, 2024 (see, NYSCEF Doc. No. 238) is granted. The defendants must furnish "all non-privileged documents, communications, and records in your possession" (id) regarding the other four lawsuits.

Lastly, the defendant's motion seeking a protective order is consequently denied. All motions seeking sanctions are denied.

So ordered.

ENTER:

DATED: September 4, 2024
       Brooklyn, N.Y.

Hon. Leon Ruchelsman
JSC

7